(No. 46768

ROBERT ROMANIK, Appellee, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF EAST ST. LOUIS, Appellant.

*Opinion filed Sept. 26, 1975.—Rehearing denied Nov. 21, 1975.*

GOLDENHERSH, J., dissenting.

Earle McCaskill, of East St. Louis, for appellant.

Bruce N. Cook, of East St. Louis, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

We allowed leave to appeal in this case to review a judgment of the Fifth District Appellate Court (19 Ill. App. 3d 431), which held that a probationary police patrolman could not be discharged without a formal hearing after notice of the grounds for the discharge. We reverse that judgment.

The probationary patrolman, Robert Romanik, was discharged by the East St. Louis Board of Fire and Police Commissioners during his probationary period. The Board

acted on the written recommendation of the chief of the department which was accompanied by a record of the occurrences upon which it was based.

Romanik brought this action against the Board, alleging that he had not been given notice of the charges against him or a hearing at which he could answer them, and seeking reinstatement and back pay. The circuit court of St. Clair County initially dismissed the complaint, but then reconsidered its order and entered a judgment reinstating Romanik and awarding him back pay after the appellate court handed down its decision in *Collins v. Towle* (1972), 3 Ill. App. 3d 753. The appellate court in the present case interpreted *Collins* as holding that "probationary patrolmen are to be considered as members of the police department for the purpose of the division of the Municipal Code dealing with removal or discharge; specifically including therein section 10—2.1—17." (19 Ill. App. 3d at 431-32.) That section requires notice of charges and a formal hearing before removal or discharge.

Because the present case was decided solely upon the basis of the appellate court's opinion in *Collins v. Towle,* we turn at once to a consideration of that opinion. The appellate court there held that the appointment of policemen to a probationary status is authorized by section 10—2.1—15 which states: "The method of examination and the rules governing examinations for promotion shall be the same as provided for applicants for original appointment, except that original appointments only shall be on probation, as provided by the rules." Ill. Rev. Stat. 1973, ch. 24, par. 10—2.1—15.

But the appellate court avoided what would seem to be the clear meaning of this provision by holding that the last phrase of the sentence, "as provided by the rules" does not authorize the adoption of rules governing original appointments on probation, but instead modifies the phrase "examination *** for original appointment." This construction eliminates, for practical purposes, the statu-

tory grant of authority to provide by rule for original appointments on probation. In so doing it runs counter to the basic philosophy underlying our civil service laws, and to long standing authority.

In 1936 the applicable statute provided, just as it does today, for two types of appointment, "regular" and "temporary." But it differed from the statute now before us in that it contained no reference whatsoever to probationary appointments. Nevertheless, the appellate court in *People ex rel. Betts v. Village of Maywood* (1st Dist. 1938), 298 Ill. App. 160, 170, held that the Board of Fire and Police Commissioners of the Village of Maywood was authorized "to make a rule [Rule 106] providing for a probationary period or to make probationary appointments." The court said:

> "*** In our opinion it is sufficient answer to plaintiff's contention in this regard to state that in the light of the spirit and policy manifested in all the civil service enactments of the legislature, the broad powers conferred upon the board under section 5 of the act to make rules 'to carry out the purpose of this act, and for appointments and removals' authorized said board to adopt Rule 106. *** Because of the very nature of the duties of firemen and policemen, in the performance of which the highest courage in dangerous situations is a prime requisite, we think the legislature must have intended that the ability to pass a written and physical examination should not be the final test. It is only through probationary appointments for a reasonable period, during which firemen and policemen may be observed in the actual performance of their duties in situations of danger, that their real worth and mettle may be tested. We are impelled to the conclusion that in enacting the Board of Fire and Police Commissioners Act, it was within the contemplation of

the legislature that the board adopt reasonable rules as to probationary appointments." 298 Ill. App. 160, 170-71.

The relevant circumstances have not changed since 1936, and we hold that the protection afforded by section 10—2.1—17 does not extend to probationary officers, because until they have completed their probationary term, they have not been "appointed" in the manner contemplated by the statute. (See *Fish v. McGann* (1903), 205 Ill. 179.) A prospective police officer's performance on written and physical examinations no more conclusively measures his actual fitness for the job than a Ph. D. degree necessarily indicates an ability to teach. The science of testing cannot indicate how a person will react under situations of unmonitored trust, grave responsibility, or severe stress. Nor can it warn of such characteristics as rudeness, insubordination, arrogance, laziness, carelessness, dishonesty, or malice. A municipality is not required to rely at its peril upon the results of written examinations in the original appointment of its police officers.

We hold that section 10—2.1—17 applies only to an officer who has completed his probationary period, and that section 10—2.1—15 authorized the Board to adopt its rule providing for summary discharge of probationary police officers. The judgments of the circuit and appellate courts are therefore reversed.

*Judgments reversed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. In my opinion the provisions of section 10—2.1—17 of the Municipal Code require that the judgments of the appellate and circuit courts be affirmed.

The rationale of the majority opinion appears to be that the power to make rules concerning probationary appointments authorizes the promulgation of a rule which provides for summary discharge. An examination of the authorities demonstrates this to be clearly erroneous.

The majority seeks support for its position in *People ex rel. Betts v. Village of Maywood,* 298 Ill. App. 160, but its analysis of that case will not withstand scrutiny. *Betts* involved a rule which provided "All appointments to the Fire Department will be upon probation. If during the first six months of actual service, the person appointed proves in the opinion of the Fire Marshal or Fire and Police Board unfit for the position, he will be dropped from the service." (298 Ill. App. 160, 168.) Although the majority correctly states that the statute in force in 1936 provided for "regular" and "temporary" appointments it also provided:

> "No officer or member of the fire or police department of any such city, village or incorporated town, who shall have been such for more than one year prior to the adoption of this Act, by such city, village or incorporated town, or who shall have been appointed under the rules and examination provided for by this Act, shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. ***
>
> The term officer or member of the fire or police department of such city, village or incorporated town as used herein shall include all officers and members of the fire and police departments of such cities, villages or incorporated towns who shall have been employed as regular members of such fire or police department for more than one year. Such regular employment for more than one year shall constitute such officers or members city officers." Ill. Rev. Stat. 1937, ch. 24, par. 854.

In contrast section 10—2.1—17 provides:

> "*** no officer or member of the fire or police department of any municipality subject to this division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges."

The terms "officer" and "member of the *** police department" are not defined and no distinction is made

between an officer or member of the department serving a probationary period and one who has attained permanent status.

Nor does the reference to *Fish–v. McGann*, 205 Ill. 179, sustain the majority's position. In 1903, when *Fish* was decided, section 10 of the Civil Service Act, which provided for appointment of employees on probation also provided: " .' *** At or before the expiration of the period of probation, the head of the department or office, in which a candidate is employed, may, by and with the consent of said commission, discharge him, upon assigning in writing his reason therefor to said commission. If he is not then discharged, his appointment shall be deemed complete.' " (205 Ill. at 183.) In contrast, section 12 of the Civil Service Act provided, with respect to employees who had completed their probationary period: " 'No officer or employee in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before said civil service commission, or by or before some officer or board appointed by said commission, to conduct such investigation.' " 205 Ill. at 183.

It is obvious that when it intended to do so the General Assembly has provided in explicit terms for the summary discharge of probationary employees. Section 10 of the Civil Service in Parks Act (Ill. Rev. Stat. 1973, ch. 24½, par. 88) provides that appointments "shall be on probation for a period of not more than 6 months" and that at any time during the probation period the appointing officer with the approval of the Civil Service Board may discharge the probationary employee. Section 36h of the University Civil Service System Act (Ill. Rev. Stat. 1973, ch. 24½, par. 38b7) also provides for six-month probationary appointments and for discharge during that

period if the employer determines that the employee has failed "to demonstrate the ability and the qualifications necessary to furnish satisfactory service." Similarly division 1 of the Civil Service in Cities Act (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—14,) in contrast to division 2.1, involved here, provides that original appointments be for a period not to exceed 6 months and for discharge during the probationary period. Had the General Assembly intended that division 2.1 contain a similar provision it would have so provided.

An examination of the relevant rules adopted by the Board of Fire and Police Commissioners of the City of East St. Louis demonstrates further the anomalous result of the majority's decision. Section 19 of the rule governing appointments provides:

> "All original appointments to the Police Department under and in accordance with the rules and regulations of the Board of Fire and Police Commissioners shall be for a probationary period of one year."

Plaintiff was discharged after nine months of service. The effect of the majority opinion is to engraft onto division 2.1, which contains no provision for discharge of probationary employees, authority for summary discharge during a longer probationary period than was provided in any of the statutes here cited. On at least one prior occasion this court has performed a statutory excision of impressive proportions (see dissenting opinion in *Community Consolidated School District Number 210 v. Mini,* 55 Ill.2d 382) but even that feat of legal surgery pales into inconsequence when compared to the engraftation here accomplished.

On a prior occasion, in considering the validity of a discharge this court recognized that although division 2.1 of article 10 permitted alternate methods of appointment all discharges are governed by the provisions of section 10—2.1—17. *Bovinette v. City of Mascoutah,* 55 Ill.2d 129, involved the question whether the city manager of Mascoutah, admittedly empowered to appoint the Chief of

Police, was authorized to dismiss him. We held that although division 2.1 of article 10 of the Municipal Code authorized appointment by the city manager, the provisions of 10—2.1—17 governed discharge. In so doing we said "The language of these sections of the statute is plain and certain and must be given effect by the courts. We cannot read into the statute words which are not within the plain intention of the legislature as determined from the statute itself. (*Donahoo v. Board of Education,* 413 Ill. 422, 426; *Smith v. Board of Education,* 405 Ill. 143, 148.) We cannot restrict nor enlarge the plain meaning of an unambiguous statute. *People ex rel. Nelson Bros. Storage and Furniture Co. v. Fisher,* 373 Ill. 228, 234." (55 Ill.2d 129 at 133.) The language of *Bovinette* is apposite here.

In addition to the clearly erroneous interpretation of the statute I call attention to the fact that it is impossible to reconcile the majority opinion with our statements concerning due process in *Powell v. Jones,* 56 Ill.2d 70, and *Kropel v. Conlisk,* 60 Ill.2d 17.