PHILLIP R. MARTIN, Plaintiff-Appellee, v. FRANCIS W. MATTHYS *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 86—53

Opinion filed November 19, 1986.

Walter D. Cummings, Ltd., of Homewood, for appellants.

Law Offices of Bruce M. Bozich, of South Holland (Bruce M. Bozich, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, Phillip R. Martin, a Homewood police officer, brought this administrative review action after defendants, the board of fire

and police commissioners of the village of Homewood, and its members and officers, Francis W. Matthys, William F. Mathieu, and Richard R. Casey, discharged plaintiff on the basis of charges filed by defendant William P. Nolan, chief of police, for certain rule violations related to plaintiff's accepting supplemental employment outside Homewood as a security guard. On administrative review, the trial court found that the relevant rules were lawful and were violated by plaintiff, but the court remanded for imposition of a sanction less severe than discharge. In a Rule 23 order, this court then dismissed defendants' appeal as being premature. On rehearing the commission again determined that discharge was appropriate. On administrative review, the trial court remanded again, directing the commission to reinstate plaintiff, to restore his back pay, and to pay plaintiff's attorney fees. Defendants appeal, contending that the commission's order of discharge should be upheld; that an award of back pay, if any, should include a setoff for monies earned; and that the court was without authority to make an award of attorney fees.

The evidence disclosed the following relevant facts. In separate actions which the commission took into consideration here, on November 17, 1980, the commission suspended plaintiff for 30 days for wrongfully entering a private residence, failing to report the abuse of a prisoner, failing to treat a prisoner in a humane fashion, and making a false official statement. On March 18, 1981, the commission suspended plaintiff for 30 days for failing to obey a lawful order of a superior, making a false official statement, and conducting himself in a manner detrimental to the good order and discipline of the police department. Because of the nature of those offenses, in April 1981 Nolan removed plaintiff, a sergeant who had been with the Homewood department for 10 years, from active command and placed him in an administrative position. Plaintiff was also denied the right to work paid security details within Homewood. Nolan testified that paid details were security-related jobs for private businesses which would aid some area of the Homewood community. Supplemental employment is distinguished from paid details, which are controlled by the police department. Officers are allowed to sign up for any paid details posted in the police station. The paid details are arranged between the employer and the department, which keeps records showing who worked the details, their hours, and their pay.

On August 5, 1981, plaintiff requested permission to accept supplemental employment in either security work outside Homewood or retail-sales work within Homewood. Lieutenant Richard A. Bielfeldt informed plaintiff that security work outside of Homewood was never

permitted, but that the sales work would probably be approved. Bielfeldt forwarded the written request to Nolan, who responded in writing on August 21, refusing plaintiff's request for security work but stating that he would be glad to receive any specifics about the sales work. On the same day, plaintiff acknowledged receipt of Nolan's response and requested an appointment with the village manager to discuss Nolan's decision. On August 28 plaintiff wrote directly to the manager, who responded in writing on September 9, advising plaintiff to provide Nolan with further information about the supplemental employment in sales. On September 12 plaintiff again asked the manager to consider his grievance. On September 16 the manager replied in writing that Nolan had not denied plaintiff the right to accept all outside employment. On October 2 plaintiff filed a written request with Bielfeldt asking permission to work at J. C. Penney Company in Matteson as a security officer. On October 5 Bielfeldt told plaintiff that the request had been forwarded to Nolan, but reminded plaintiff that no security work outside Homewood had ever been approved for any officer.

On October 8, unknown to Nolan, plaintiff began working at J. C. Penney as a security officer. Susan M. Schiller, manager of security for J. C. Penney, testified that when she asked plaintiff to check with his employer about being available once each month for court dates, plaintiff later telephoned to say he could accept the job. On October 13 Nolan informed plaintiff in writing that he could not work as a security officer in Matteson. On October 20 plaintiff acknowledged receipt of that letter and again requested a meeting with the manager to discuss Nolan's decision. Plaintiff also stated: "I am advising you of my intention to accept supplemental employment until such time as this matter is finally decided." On October 23 Nolan met with plaintiff, who stated that he had started working as a security officer for J. C. Penney on October 8 or 9. Plaintiff indicated he understood that Nolan had denied plaintiff permission to accept such a job on both August 21 and October 13, but he decided to take the job anyway. Nolan repeated his decision refusing plaintiff permission to accept that supplemental employment.

Nolan testified that it is important to know the nature of an officer's supplemental employment because if the job is outside Homewood the officer might not be available for emergency duty. Moreover, certain jobs might reflect poorly on the department's image. Nolan testified that requests for security work outside Homewood were always disapproved because of possible conflicts in court dates, the hazardous nature of the duty, the lack of any control by the department

over the officer while he was outside Homewood, and the possibility that any misconduct by the officer would reflect poorly on the department. Nolan testified further that he considered plaintiff's direct disobedience to be detrimental to the functioning of the police department as a paramilitary organization. He felt it could instill poor ideals in other members of the department, particularly because plaintiff was a ranking officer.

Plaintiff subpoenaed 34 Homewood police officers to appear at the hearing, and he called 24 of them as witnesses. Plaintiff stated that through their testimony he planned to show that the rules and regulations were being applied arbitrarily to him. Fourteen officers testified that they had worked only paid details within Homewood and had never requested permission for supplemental employment. Nine officers testified that they had received permission to work nonsecurity types of supplemental employment. One officer testified that he had worked paid details and that he had received permission to work a one-night security job within Homewood on Halloween. Three officers testified that after being denied permission to work security jobs outside Homewood, they did not accept the jobs.

At the December 8, 1981, hearing before the commission, plaintiff appeared *pro se*. While arguing a motion prior to the taking of testimony, plaintiff stated: "I think I have a right to disobey unlawful orders." On the basis of the evidence, the commission found that plaintiff had violated its regulations by disobeying a lawful order emanating from a superior officer, engaging in supplemental employment without the permission of the chief of police, and engaging in conduct which was detrimental to the good order and discipline of the department. The commission found there was sufficient cause to discharge plaintiff.

On September 15, 1983, the trial court held that the commission's finding of guilty was not contrary to the manifest weight of the evidence and that the regulations violated were valid. The court, however, remanded for the imposition of a lesser sanction because there was insufficient evidence to warrant discharge. On appeal by defendants, this court held that an appeal was premature. On March 15, 1985, the commission reconvened. During that hearing, over plaintiff's objection, the commission accepted as part of the record and considered plaintiff's prior 30-day suspensions. The commission again discharged plaintiff. On December 13, 1985, the trial court granted plaintiff's petition for an order directing the commission to reinstate plaintiff. The court also ordered defendants to restore back pay to plaintiff as of the date of his discharge, and awarded plaintiff attor-

ney fees. The court denied defendants' request for a stay of the reinstatement order, and plaintiff was subsequently reinstated by defendants, pending this appeal.

Defendants contend that the commission's decision to discharge plaintiff should be upheld. Courts reviewing administrative agency decisions use a two-step process. The court first determines whether the commission's findings of fact are contrary to the manifest weight of the evidence and then determines whether the commission's conclusion that the employee's conduct warranted discharge is arbitrary, unreasonable, or unrelated to the requirements of the service. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115; *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) Plaintiff does not challenge the commission's findings of fact regarding his violation of the police department rules, and we need not address that issue.

The second step of the process requires us to look at the cause for plaintiff's discharge. "Cause" is not defined by the legislature, but has been judicially defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the service's discipline and efficiency and which the law and sound public opinion recognize as good cause for his no longer occupying the position. (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) Such shortcoming need not be directly connected with the performance of work, but must not be trivial, arbitrary, or unreasonable. *Department of Driver Services v. Secretary of State Merit Com.* (1985), 132 Ill. App. 3d 753, 477 N.E.2d 1372.

■ The question of whether cause for discharge exists should generally be determined by the administrative agency and substantial deference must be given to its ruling. (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 449 N.E.2d 845; *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) The question on appeal is not whether this court would have imposed a more lenient sanction. Instead, the question is limited to whether the commission acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service. (*Kloss v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 252, 449 N.E.2d 845.) This court cannot assume the function of a supercommission or super chief of police. (See

*Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *cert. denied* (1978), 435 U.S. 911, 55 L. Ed. 2d 502, 98 S. Ct. 1463; *Nolting v. Civil Service Com.* (1955), 7 Ill. App. 2d 147, 129 N.E.2d 236.) The commission is best able to determine the effect which plaintiff's conduct will have on the proper operation of the police force. See *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782.

■ The corporate authorities of each municipality may prescribe the duties and powers of all police officers. (Ill. Rev. Stat. 1981, ch. 24, par. 11—1—2.) Absent manifest and palpable abuse of discretion, the wisdom, necessity, and propriety of any action regarding the administration of a police force is a matter for the municipality to decide. (*Braje v. Board of Fire & Police Commissioners* (1985), 139 Ill. App. 3d 90, 487 N.E.2d 91.) The police chief has a responsibility to the community to secure maximum efficiency from the police force and his actions may only be reviewed to determine whether there was good faith and a reasonable exercise of discretion. (*Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 447 N.E.2d 418.) The government's interest in the efficiency of public employees is especially strong with respect to police officers because of the need for them to act quickly and to protect lives and property. 113 Ill. App. 3d 409, 447 N.E.2d 418.

■ Plaintiff's own witnesses demonstrated that Chief Nelson did not arbitrarily apply the rule that officers could not work at supplemental security employment outside of Homewood. Without exception, the department denied permission to every officer who sought security-related work outside of Homewood. Neither Nolan nor the commission acted arbitrarily in applying the rule and in finding that only plaintiff chose to disobey the rule. Their motives were reasonably based on the best interests of the department and those orders were not an abuse of discretion.

■ We note that the charges against plaintiff were completely unrelated to working paid details within Homewood. That issue, however, was repeatedly raised by plaintiff before the commission and before this court. Plaintiff argues that he was forced to look outside of Homewood for security work because he had been arbitrarily forbidden to work paid security details within Homewood, while all other officers were permitted to work paid details. By continuously raising this issue, plaintiff opened the door to Chief Nolan's explanation as to why plaintiff was forbidden to work paid details. Nolan sufficiently explained that his action was not arbitrary when he referred to plaintiff's prior disciplinary suspensions involving actions which made it

reasonable to prevent him from working in a position where he would have public contact. Thus, the commission could properly consider plaintiff's past record in determining that he should be discharged.

■ Other factors also support the discharge. Security work typically requires the officer to be available for court dates, which might result in conflicts with his police force duties. It is not necessary for defendants to show actual conflicts. A showing of potential conflicts between the primary and supplemental employment is sufficient to establish cause for discharge. (*Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 447 N.E.2d 418; *Weisenritter v. Board of Fire & Police Commissioners* (1979), 67 Ill. App. 3d 799, 385 N.E.2d 336.) An additional factor supporting the commission's action is the loss of the police department's control over plaintiff when he works outside of Homewood. Officers are always subject to call and for 15 to 20 hours each week plaintiff would be out of town and not readily available for emergency duty. These factors combine to establish that the commission did not act unreasonably and that the discharge was related to the needs of the service. See *Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 447 N.E.2d 418.

Other factors support the holding that the commission selected a type of discipline related to the needs of the service. Over an extended period, plaintiff repeatedly and wilfully chose to disobey orders of a superior officer. On August 21, 1981, Nolan specifically denied plaintiff's request for permission to work outside of Homewood as a security officer. On October 5 Bielfeldt, in response to another request, told plaintiff that such a request had never been approved for any officer. On October 8 plaintiff ignored the communication from Nolan and began working as a security officer in Matteson. On October 13 Nolan again ordered plaintiff not to accept such employment. On October 20, almost two weeks after beginning his supplemental security job, plaintiff wrote: "I am advising you of my intention to accept supplemental employment until such time as this matter is finally decided." On October 23 plaintiff told Nolan that he had begun working as a security officer in Matteson two weeks earlier, despite the fact that he clearly understood Nolan's orders to the contrary. Plaintiff continuously and intentionally disobeyed the chief's orders. A lesser sanction, such as a 30-day suspension, would not have alleviated the intolerable situation since plaintiff never indicated he would terminate his supplemental employment. We note that plaintiff had previously received the maximum statutory suspension for disobeying orders and for filing false official statements. The commission properly considered the prior disciplinary actions. (See *Allman v. Police*

*Board* (1986), 140 Ill. App. 3d 1038, 489 N.E.2d 929.) As the commission stated at the second hearing, it was aware of plaintiff's entire record because it was responsible for hiring and promoting plaintiff in addition to disciplining him.

■ At the hearing, plaintiff conceded that he had refused to comply with Nolan's orders but contended that his refusal was justified because the orders were unlawful. The police department is a paramilitary organization with a chain of command leading to the chief of police. In order to establish and maintain a leadership role, the chief of police must command the respect and obedience of all officers. Flagrant, deliberate, and continuing disobedience, especially by an officer of high rank and ten years of experience, undermines that authority and weakens the entire structure of the organization. (See *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147; *Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 447 N.E.2d 418.) A rule permitting each officer to subjectively determine whether he believes an order to be lawful and reasonable would destroy the discipline necessarily inherent in a paramilitary organization such as the police department. (*Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 447 N.E.2d 418; *Williams v. Police Board* (1972), 8 Ill. App. 3d 345, 290 N.E.2d 669.) A police officer does not have the prerogative of actively disobeying an order from a superior while seeking a determination as to the validity of that order. Such a practice would thwart the authority and respect which is the foundation of the effective and efficient operation of a police force. (See *Myers v. Police & Corrections Merit Board* (1978), 67 Ill. App. 3d 223, 384 N.E.2d 805.) Thus, plaintiff's conduct cannot be excused. The discipline imposed was clearly related to the needs of the Homewood police department.

The trial court's overturning of the commission's discipline under the facts presented here was unwarranted and deprives the commission of the substantial deference that its decision should receive. We cannot conclude that the commission, in directing discharge, acted in an unreasonable or arbitrary manner or that the sanction was unrelated to the needs of the service.

In view of our holding, we need not address the other issues raised by defendants.

For the reasons stated, the judgment of the circuit court of Cook County reinstating plaintiff is reversed.

Judgment reversed.

RIZZI, P.J., and WHITE, J., concur.