JUNE KRECEK, Plaintiff-Appellant, v. BOARD OF POLICE COMMISSIONERS OF LA GRANGE PARK *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—93—2986

Opinion filed February 8, 1995.

Adamski & Conti, of Chicago (Karen Conti, of counsel), for appellant.

Russell W. Hartigan & Associates, of Chicago (Russell W. Hartigan and Keith A. Mandelski, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

After plaintiff, June Krecek, a probationary police officer, was terminated without a hearing, she filed an administrative review complaint and later a complaint for retaliatory discharge, wrongful discharge, and breach of contract against defendants, Board of Police Commissioners of La Grange Park, Illinois (the Board), John Dunlop, individually and as La Grange Park chief of police, and Board members George Sasso, Gilbert Lilly, and Joseph Abraham. The trial court granted defendants' section 2—619 motion to dismiss. (735 ILCS 5/2—619 (West 1992).) On appeal, plaintiff asserts that (1) her termination violated her employment contract with the police department; and (2) her retaliatory discharge and wrongful discharge claims are not time-barred.

On October 8, 1990, plaintiff began training as a probationary police officer with the La Grange police department. After successfully completing the training program, she began active duty as a probationary police officer on December 17, 1990. Her probationary period was scheduled to end on October 8, 1991. On March 30, 1991, plaintiff suffered back and knee injuries in an automobile accident while on duty. As a result, she was placed on medical leave during which time she received workers' compensation pay.

On September 6, 1991, Chief Dunlop received a notice from the department's insurance carrier that Dr. David Spencer had examined plaintiff and determined that she was physically able to return to work. Based on that recommendation, Dunlop contacted plaintiff and instructed her to return to active duty on September 9, 1991. Dunlop told plaintiff that the department's insurance carrier had determined that she was fit for duty and that they were stopping her disability payments based on the doctor's findings. After plaintiff told Dunlop that she was scheduled to receive medical treatment on September 9, 1991, Dunlop ordered her to return to duty on September 10, 1991.

Plaintiff neither appeared for work on September 10, 1991, nor notified Dunlop or the police department that she would be absent. According to plaintiff's amended complaint, her physician would not release her to return to work as of September 15, 1991, and advised her that she should not return to work for another month.

On September 11, 1991, Dunlop met with Timothy Schuenke, the village manager, and received approval to recommend termination of plaintiff. Dunlop and Schuenke then recommended to the Board of Police Commissioners that plaintiff be terminated due to her failure to obey an order to return to active duty. On September 12, 1991, the board voted to terminate plaintiff and she was notified.

On October 17, 1991, plaintiff filed a complaint for administrative review in which she claimed she was denied due process of law

because she did not receive a hearing or a right to confront the evidence against her before being terminated. After hearing arguments, the trial court dismissed the complaint with prejudice on June 5, 1992. The trial court ruled that a probationary officer is subject to dismissal without a hearing or being notified of any reason. Since there had been no administrative hearing, the court held that administrative review was not proper.

Plaintiff did not appeal. Instead, on October 27, 1992, she filed a complaint claiming retaliatory discharge, wrongful discharge, and a breach of contract. Defendants then filed a section 2—619 motion to dismiss (735 ILCS 5/2—619 (West 1992)) claiming that (1) plaintiff's retaliatory discharge and wrongful discharge claims are time-barred by a one-year statute of limitations; and (2) the breach of contract claim should be dismissed because plaintiff had no employment contract at the time she was terminated. The trial court granted the motion to dismiss.

As a preliminary matter, we note that plaintiff's claims are not barred by *res judicata* because her prior administrative review claim was based solely on whether she had the right to a hearing before termination and did not involve the same issues as are in this appeal.

Plaintiff's first argument on appeal is that her termination violated her employment contract with the police department. Plaintiff contends that her employment contract with the police department consisted of the Rules and Regulations of the La Grange Park police department (Department Rules), the Rules of the Board of Police Commissioners (Commissioners' Rules), and the La Grange Park police department Policy and Procedure Manual (Department Manual).

To support her position, plaintiff relies on *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490, 505 N.E.2d 314, which held that the hospital's employee handbook constituted an employment contract. *Duldulao* established a three-prong test for determining whether an employee handbook constitutes an employment contract: (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. (*Duldulao*, 115 Ill. 2d at 490.) When all three conditions are met, an employee's continued work constitutes consideration for the promises contained in the handbook, and a valid contract is formed under traditional principles. *Duldulao*, 115 Ill. 2d at 490.

Plaintiff argues that the three prongs of *Duldulao* were met in her case: (1) the Commissioners' Rules, section 7—1, made an offer by requiring that "[a]ll officers and members of the police department shall observe and obey all rules and orders of the Board," and member is defined as "any employee of the department," making no distinction between probationary police officers and nonprobationary police officers; (2) the Department Rules, Commissioners' Rules, and Department Manual were disseminated to each department member, who was required to familiarize herself or himself with them and to comply with them; and (3) plaintiff accepted the offer by commencing and continuing to work after learning of the Commissioners' Rules, Department Rules, and Department Manual.

We disagree. The controlling case is *Levitt v. Gorris* (1988), 167 Ill. App. 3d 88, 520 N.E.2d 1169, in which the court ruled that the employee handbook did not contain a contract between the plaintiff, a probationary police officer, and the defendants. The *Duldulao* test did not apply because the rule pertaining to probationary officers did not promise a pretermination hearing, prior written notice of charges, or any explanation. *Levitt*, 167 Ill. App. 3d at 92.

■ Similarly, in this case, the *Duldulao* test does not apply because there was no clearcut promise by the Village to give plaintiff the same rights as a nonprobationary police officer. With the exception of section 3—17, which specifically pertains to probationary police officers, the rules and regulations do not provide probationary officers with any rights. They merely refer to members and employees without specifically excluding or including probationary officers. (*Faustrum v. Board of Fire & Police Commissioners* (1993), 240 Ill. App. 3d 947, 949, 608 N.E.2d 640.) Probationary police officers are not appointed police officers until they have completed their probationary terms. (*Romanik v. Board of Fire & Police Commissioners* (1975), 61 Ill. 2d 422, 425, 338 N.E.2d 397.) Since the first prong of *Duldulao* is not satisfied, plaintiff had no contractual employment rights and could be terminated at will.

In a related argument, plaintiff asserts that she had a protectible employment interest that emanated from section 3—17 of the Commissioners' Rules, entitled "Discharge During Probationary Period," which was the only rule that pertained to probationary employees. Section 3—17 states:

> "If any appointee during his probationary period shall be incompetent or not qualified for the performance of the duties of the position he is filling, the Board may at any time during the probationary period discharge said appointee. Prior to the completion of the probationary period, the Chief of Police, with the ap-

proval of the Village Manager, shall make recommendations for the dismissal or retention of the probationer."

Plaintiff argues that this rule is different from the general catchall phrases in *Romanik* (61 Ill. 2d 422, 338 N.E.2d 397) and *Levitt* (167 Ill. App. 3d 88, 520 N.E.2d 1169), which both held that the former probationary police officer did not have a property interest in his employment. Plaintiff maintains that section 3—17 provides for discharge in the limited circumstances where the probationary officer is found incompetent or not qualified as opposed to providing for summary discharge in any circumstances as provided for in *Romanik* and *Levitt*. Moreover, plaintiff contends that the La Grange police department chose to go further than the requirements of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—5 (now 65 ILCS 5/10—2.1—5 (West 1992))) and adopted extensive, enforceable rules and regulations, which resulted in her property interest in her employment entitling her to the process guaranteed by the terms of the contract.

We disagree. Since there was no provision for discharge of probationary police officers in *Romanik* (*Romanik*, 61 Ill. 2d at 426-27 (Goldenhersh, J., dissenting)), we will compare the rule in this case with the one in *Levitt*. The commissioners' rules in *Levitt* provided in pertinent part:

> "All original appointments shall be for a probationary period of not less than eighteen (18) months from original date of appointment. If the appointee's services have not been satisfactory, he will be discharged." *Levitt*, 167 Ill. App. 3d at 90.

Similarly, section 3—17 provides that a probationary police officer can be terminated during his or her probationary period if he or she is "incompetent or not qualified for the performance of the duties of the position." There is virtually no difference between the two rules. As in *Levitt*, the La Grange police department went no further than the Illinois Municipal Code required. (*Levitt*, 167 Ill. App. 3d at 92; Ill. Rev. Stat. 1991, ch. 24, par. 10—2.1—5 (now 65 ILCS 5/10—2.1—5 (West 1992)).) Accordingly, we find that section 3—17 did not create a property interest in continued employment.

A person has a property interest in his or her job only where he or she had a legitimate expectation of continued employment based on a legitimate claim of entitlement. (*Faustrum*, 240 Ill. App. 3d at 949.) To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, State law, contract or understanding limiting the ability of the board to discharge him. *Faustrum*, 240 Ill. App. 3d at 949.

Absent a clear statement to the contrary, probationary police officers have no right to continued employment under the Illinois Municipal Code. (*Romanik*, 61 Ill. 2d at 425; *Faustrum*, 240 Ill. App. 3d at 950.) The rationale is that written and physical examinations do not reflect realistic working conditions, are inadequate measures of a candidate's ability, and give inadequate warnings of undesirable characteristics. (*Levitt*, 167 Ill. App. 3d at 91.) As a result, plaintiff's supervisors should have the unfettered discretion to determine whether she is fit to be a police officer. *Faustrum*, 240 Ill. App. 3d at 950.

■ To establish a property interest in a probationary police officer's employment with a police department, the municipality must establish procedural requirements for termination of those officers. (*Faustrum*, 240 Ill. App. 3d at 949.) Examples of such procedures are found in *Lewis v. Hayes* (1987), 152 Ill. App. 3d 1020, 505 N.E.2d 408, and *Fernandes v. Nolen* (1992), 228 Ill. App. 3d 424, 427, 592 N.E.2d 1151.

In *Lewis* (152 Ill. App. 3d at 1024), the court held that the village modified the status of a probationary police officer because it enacted rules that specifically described certain procedures for the removal of probationary employees. The rule pertaining to probationary officers provided:

"[A] probationary employee can be terminated if he is found incompetent or disqualified for the performance of his duties. [Termination can take place] by and with consent of the Commission after the chief submits written reasons for the termination." (*Lewis*, 152 Ill. App. 3d at 1024.)

The requirement of written reasons for termination meant that the probationary employee could be terminated only for cause. *Lewis*, 152 Ill. App. 3d at 1024.

In *Fernandes* (228 Ill. App. 3d at 427), the plaintiff had a property interest in his continued employment as a probationary officer with the Illinois State Police because the State Police Field Training Manual provided for a formal review and evaluation prior to the termination of probationary officers.

In this case, section 3—17 did not provide for more protection for probationary employees than was required by the Municipal Code. Thus, plaintiff had no protectible property interest in continued employment based on section 3—17.

Next, plaintiff contends that Dunlop's order to return to work was arbitrary and not in good faith because Dunlop had full knowledge that her physician would not release her to active duty.

■ We disagree. Defendants acted in good faith in terminating plaintiff by following section 3—17 of the Commissioners' Rules,

which is the only rule that applies to disciplining or discharging probationary officers. Dunlop's affidavit shows that section 3—17 was followed. Dunlop conferred with Schuenke about plaintiff disobeying Dunlop's direct order to return to work. Instead of contacting Dunlop or the police department about her pending absence, plaintiff chose to ignore the order. Both Dunlop and Schuenke recommended to the commission that plaintiff be terminated. The next day, the commission considered plaintiff's case and decided to terminate her.

The police chief has a responsibility to the community to secure maximum efficiency from the police force and his or her actions are to be reviewed to determine whether there was good faith and a reasonable exercise of discretion. (*Martin v. Matthys* (1986), 149 Ill. App. 3d 800, 806, 501 N.E.2d 286.) Absent manifest and palpable abuse of discretion, the wisdom, necessity, and propriety of any action regarding the administration of a police force is a matter for the municipality to decide. (*Martin*, 149 Ill. App. 3d at 806.) A police department is a paramilitary organization with a chain of command leading to the chief of police. (*Doe v. Calumet City* (1994), 161 Ill. 2d 374, 391; *Martin*, 149 Ill. App. 3d at 808.) In order to establish and maintain a leadership role, the chief of police must command the respect and obedience of all officers. (*Martin*, 149 Ill. App. 3d at 808.) A police officer does not have the prerogative of actively disobeying an order from a superior while seeking a determination as to the validity of that order because such a practice would thwart the authority and respect that is the foundation of the effective and efficient operation of a police force. (*Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 436, 603 N.E.2d 477.) Since defendants did not abuse their discretion in terminating plaintiff, we conclude that she was terminated in good faith.

Next, defendants assert that plaintiff's claims for retaliatory discharge and wrongful discharge are time-barred by the one-year statute of limitations set forth in section 8—101 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 8—101 (now 745 ILCS 10/8—101 (West 1992))).

Plaintiff's retaliatory discharge and wrongful discharge claims are based on the allegation that she was terminated because she filed a workers' compensation claim. The Illinois Supreme Court has recognized the tort of retaliatory discharge for employees who are terminated for filing workers' compensation claims as an exception to the general rule that an at-will employment is terminable at any time for any or no cause. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128, 421 N.E.2d 876; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181-82, 384 N.E.2d 353.

■ Plaintiff's argument that section 8—101 of the Tort Immunity Act does not apply because her retaliatory discharge and wrongful discharge claims arose from her employment contract fails because she did not have an employment contract with defendants.

Next, plaintiff contends that her claims are not time-barred because the doctrine of exhaustion of remedies tolls the statute of limitations and the presentation of an administrative claim interrupts all applicable statutes of limitations. Plaintiff bases those claims on the assertion that she exhausted her available administrative remedies on June 5, 1992, when the trial court resolved her administrative review case.

■ Plaintiff is mistaken. Her administrative remedies were exhausted before she filed her complaint for judicial review of the administrative action. Exhaustion of all administrative remedies available occurs when a final administrative decision is rendered. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 357-58, 326 N.E.2d 737; *Kenilworth Insurance Co. v. Mauck* (1977), 50 Ill. App. 3d 823, 365 N.E.2d 1051.) In this case, all administrative remedies were exhausted on September 12, 1991, when the Board of Commissioners issued the final administrative decision of termination.

■ Next, plaintiff asserts that the statutes of limitations should have been suspended for the eight months that her judicial review action was pending in court. Her argument fails because her administrative review case in chancery court had nothing to do with her retaliatory discharge and wrongful discharge claims. Thus, they did not affect the statute of limitations, which began to run when she was terminated. Although plaintiff had the right to file a separate lawsuit from the one in chancery court, it did not affect the statute of limitations. The tolling of a statute of limitations is normally restricted to those situations in which a plaintiff has been prevented from pursuing her cause of action through no fault of her own. *Illinois Bell Telephone Co.*, 60 Ill. 2d at 356.

Plaintiff's final argument that defendants will not be prejudiced by allowing these claims to proceed has no merit.

Based on the foregoing, we affirm the circuit court's judgment.

Affirmed.

GREIMAN, P.J., and TULLY, J., concur.