Thomas DRAGHI, M.D., M.P.H.,
Plaintiff–Appellant,

v.

COUNTY OF COOK, a unit of local government of the State of Illinois, John H. Stroger, Jr., as President and a Member of the Cook County Board, Ruth M. Rothstein, individually and as Chief of the Bureau of Health Services of Cook County, Illinois and as Director of Cook County Hospital, et al., Defendants–Appellees.

No. 98–1615.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1998.

Decided July 15, 1999.

Rehearing Denied Aug. 19, 1999.

Joseph A. Morris (argued), Morris, Rathnau & Delarosa, Chicago, IL, for Plaintiff–Appellant.

Randolph M. Johnston (argued), Office of the State's Attorney of Cook County, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and BAUER, and MANION, Circuit Judges.

BAUER, Circuit Judge.

On April 14, 1997, Plaintiff Thomas Draghi, M.D., M.P.H., filed a nine-count amended complaint against Cook County Hospital (the "Hospital") and several other persons affiliated with the Hospital (collectively the "Defendants"), alleging violations of § 1983 of the Civil Rights Act, the Illinois Constitution, and state claims for breach of contract. The Defendants filed a motion for summary judgment, which the district court granted. Dr. Draghi now appeals the district court's grant of summary judgment in favor of the Defendants. We affirm.

## I. BACKGROUND

On July 21, 1993, the Hospital hired Dr. Draghi as a physician. As part of his employment, he was given a six-month provisional appointment as a medical staff member of the Hospital. According to the Hospital's Medical Staff Bylaws (the "Bylaws"), after six months of satisfactory performance, to be determined by the Executive Medical Staff (the "EMS"), a provisional appointee may be promoted to an attending physician.

On October 18, 1993, the acting Chairperson of the Department of Medicine for the Hospital informed Dr. Draghi that his clinical privileges were being summarily suspended. The suspension was based upon the following charges: (1) failing to comply with Hospital policy regarding ventilator adjustments; (2) placing a "do not resuscitate" order on an alert patient without discussing the order with the patient or family members; (3) inserting chest tubes without the proper credentials to perform the procedure; and (4) administering a sclerotherapy that was not indicated.

The suspension was referred to the Medical Staff's Peer Review Committee (the "PRC"). The PRC met several times on the matter of Dr. Draghi's suspension, and on November 22, 1993, the PRC recommended that Dr. Draghi be charged with insubordination but that his clinical privileges be restored. The recommendation of the PRC was then forwarded to the EMS for further review. The EMS reviewed the PRC's opinion and recommended that Dr. Draghi's medical privileges be revoked.

Pursuant to the Hospital's Bylaws, an adverse recommendation of the EMS entitled Dr. Draghi to a hearing. Accordingly, in September 1994, a Hearing Committee was formed and a hearing was held. On November 15, the Hearing Committee issued its report, recommending that all the charges against Dr. Draghi be dismissed and that his clinical privileges be restored. The recommendation of the Hearing Committee was sent back to the EMS for another review and recommendation. On December 13, the EMS approved the recommendation of the Hearing Committee and forwarded its recommendation to the Joint Conference Committee (the "JCC"). On January 24, 1995, the JCC rejected the EMS recommendation and determined that Dr. Draghi's clinical privileges should

be revoked. On February 7, 1995, the Hospital's Board of Commissioners (the "Board"), the final authority on disciplinary termination matters, adopted the recommendation of the JCC and voted to terminate Dr. Draghi's provisional appointment, clinical privileges, and employment with the Hospital.

Because the decision of the Board was adverse to the recommendation of the EMS, the Hospital's Bylaws required that the Board's decision to terminate be returned to the JCC for review. On March 7, the JCC approved the Board's decision to terminate Dr. Draghi and returned its decision to the Board. On April 5, the Board affirmed its February 7 decision to terminate Dr. Draghi. On April 11, the Hospital's Interim Medical Director wrote Dr. Draghi a letter advising him of the Board's decision.

On April 14, 1997, Dr. Draghi filed a nine-count amended complaint against the Defendants in federal district court. On November 10, the district court issued an order granting the Defendants' motion for summary judgment as to four and one-half of the nine claims. The district court also ordered Dr. Draghi to file factual submissions (pursuant to No. Dist. Ill. Local Gen. R. 12(N)) before it decided the remaining issues in his amended complaint. On February 10, 1998, the district court granted summary judgment in favor of the Defendants on the remaining counts. In granting the Defendants' motion, the district court determined that Dr. Draghi failed to state a due process violation under the Fourteenth Amendment because he had failed to set forth any genuine issues of material fact identifying a property or liberty interest in his employment or clinical privileges at the Hospital. This appeal followed.

On appeal, Dr. Draghi argues that the district court erroneously granted summary judgment in favor of the Defendants because: (1) he had a protectible property interest in his local government employment and in the Hospital's clinical privi-leges, which he was denied without due process; (2) he had a protectible liberty interest in his employment and calling, which he was denied without due process; and (3) the Hospital violated his substantive due process rights by applying the Bylaws in an arbitrary and capricious manner.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review grants of summary judgment *de novo*. Dr. Draghi must make a showing sufficient to establish each essential element of his cause of action for which he will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). He also must show that there is more than a mere metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If we cannot find evidence to sustain a jury verdict in favor of Dr. Draghi, we will affirm the district court's grant of the Defendants' motion for summary judgment. *Smith v. Severn,* 129 F.3d 419, 425.

In reviewing a motion for summary judgment, we view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Id.* "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." *Id.* (collecting cases).

### B. Alleged Property Interests Creating a Procedural Due Process Violation

We first consider whether Dr. Draghi had a protectible property interest in either his local government employment or in his clinical privileges and if so, whether

either of those property rights was denied without due process. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. However, "property," for purposes of the Fourteenth Amendment, "denotes a broad range of interests that are secured by existing rules or understandings." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (internal citations and quotations omitted). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ According to Illinois courts, "[a] person has a property interest in his job where he has a legitimate expectation of continued employment ... based on a legitimate claim of entitlement." *Faustrum v. Board of Fire & Police Comm'rs,* 240 Ill.App.3d 947, 181 Ill.Dec. 567, 608 N.E.2d 640, 641 (1993). "To show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Krecek v. Board of Police Comm'rs of La Grange Park,* 271 Ill.App.3d 418, 207 Ill.Dec. 227, 646 N.E.2d 1314, 1318–19 (1995). A "unilateral expectation of continued employment does not create an entitlement that the due process clause protects." *Simpkins v. Sandwich Comm. Hosp.,* 854 F.2d 215, 218 (7th Cir. 1988). Here, Dr. Draghi has offered no ordinance, contract or other understanding that created a legitimate expectation of employment. Dr. Draghi's mere status as a Hospital employee does not create a property interest for purposes of the Fourteenth Amendment. *Cf. Woodbury v. McKinnon,* 447 F.2d 839, 842 (5th Cir.

1971) ("A doctor has no constitutional right to practice medicine in a public hospital.").

■ We next look to the terms of Dr. Draghi's provisional appointment at the Hospital to determine whether his "provisional appointee" status created a property interest for purposes of the Fourteenth Amendment. Article III, § 3b of the Bylaws provides, in pertinent part:

> PROVISIONAL APPOINTMENT All initial appointments shall be provisional for six months. The Board, upon the recommendation of the [EMS], may extend a provisional appointment for one 6 month period. Provisional appointees shall be elevated to full appointment by the Board on recommendation of the [EMS] after six months of satisfactory service, but if not so recommended within one year of initial appointment, shall be terminated and shall be entitled to the procedural rights as provided in Article VIII [Hearing and Appeal Procedures].

Dr. Draghi contends that the terms of this provision "confer upon [him] a six month entitlement to privileges and employment, terminable only at the conclusion of the six month period, and then only for cause." We do not read this provision as conferring upon a provisional appointee within his first six month period (e.g., Dr. Draghi) any privileges or guarantees of employment. This Bylaw focuses upon the employment privileges and guarantees of a provisional appointee *after* his initial six month provisional appointment, not during the provisional appointment. The Bylaws governing Dr. Draghi's provisional appointment did not create a Fourteenth Amendment property interest.

We next address Dr. Draghi's contention that he had a property interest in his medical staff privileges at the Hospital. In resolving this issue, we apply the same standard that we did when reviewing Dr. Draghi's property interest claim in employment at the hospital—he must show a legitimate expectation of employment based on a "specific ordinance, state law,

contract or understanding limiting the ability of the state or state entity to discharge him." *Krecek,* 207 Ill.Dec. 227, 646 N.E.2d at 1318–19.

In support of his position, Dr. Draghi's brief cites numerous cases for the proposition that "a physician *may* [ ] have a property interest in the continuation of his staff and medical privileges." (Emphasis supplied). Notwithstanding the ambiguous phraseology of the proposition that Dr. Draghi cites as supporting authority, we find these cases factually dissimilar to this case, as none of the cases Dr. Draghi cites involved clinical privileges similar to the *provisional appointee* privileges that Dr. Draghi held at the Hospital. Dr. Draghi does not offer this Court any Hospital Bylaw or any other evidence supporting his claim. Dr. Draghi has failed to show that he has a Fourteenth Amendment property interest in his medical staff privileges.

### C. Alleged Liberty Interest Creating a Procedural Due Process Violation

■ Dr. Draghi next contends that he had a protectible liberty interest in his employment and calling, which he was denied without due process. "The concept of liberty protected by the due process clause has long included occupational liberty— 'the liberty to follow a trade, profession, or other calling.'" *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir. 1992) (citing *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1138 (7th Cir. 1984)). The cases have consistently drawn a distinction, however, between occupational liberty and the right to hold a specific job. The due process clause of the Fourteenth Amendment secures the liberty to pursue a calling or occupation, and not the right to a specific job. *Wroblewski,* 965 F.2d at 455; *Lawson,* 725 F.2d at 1138. "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. 2701.

■ The due process clause of the Fourteenth Amendment does not make the denial of a liberty interest actionable; it only makes the denial of a liberty interest *without due process* actionable. Thus, if a party is given notice and an opportunity to respond at a pre-termination hearing, due process has been afforded. *See Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487 (holding that in the context of public employment, the essential requirements of due process are notice and an opportunity to be heard).

■ In this case, we need not determine whether Dr. Draghi had a liberty interest in his employment and calling, because even if we assume that he did have such a liberty interest, the undisputed facts show that he was given all that procedural due process requires—notice and an opportunity to respond to the charges against him at a pretermination hearing. By his own admission, Dr. Draghi had at least two pre-termination hearings; one before the PRC and one before the Hearing Committee. Dr. Draghi's amended complaint states, in pertinent part:

> Beginning on October 27, 1993, the [PRC] . . . met pursuant to Section 7a of Article VIII of the [Hospital's] Bylaws to consider [the] charges and to review the suspension of Draghi's privileges. The [PRC] . . . took approximately 20 hours of testimony, including six hours of testimony from Draghi. . . . On November 22, 1993, the [PRC] . . . issued its report to the [EMS].
>
> . . .
>
> On or about December 28, 1993, pursuant to the Bylaws, Draghi requested a hearing before the Hearing committee. Draghi was given written notice of the recommendation of the [EMS] and of its intention to convene a Hearing Committee . . . in a letter of January 10, 1994.
>
> . . .
>
> The Hearing Committee held hearings in a trial-type setting, with representatives of the management of [the] . . .

Hospital, including ... an Assistant State's Attorney ... prosecuting the charges against Draghi, and Draghi and his representatives defending against them. Over a period of more than 150 days the Hearing Committee took approximately 15 days of testimony, examined medical and other records, received oral and written arguments, and deliberated.

Amend. Comp., at ¶¶ 58–59, 62, 64.

Although the Board rejected the Hearing Committee's and the EMS's recommendation that Dr. Draghi be reinstated, we will not conclude that Dr. Draghi was not afforded due process. Due process requires that Dr. Draghi be given a hearing so that he may present his side of the story. The hearing serves as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. 1487 (citations omitted). The hearing "need not definitively resolve the propriety of the discharge." *Id.* at 545, 105 S.Ct. 1487. Assuming that Dr. Draghi had a liberty interest, that interest did not include the right to reinstatement at the Hospital. The Board was under no duty to accept the recommendation of the Hearing Committee or the EMS. Article VII, § 6d of the Hospital's Bylaws provides that the Board is entrusted with the power to "review the recommendation[s] and supporting documents and make a final decision" on the corrective action. That is precisely what the Board did, and we will not dispute their decision. As the Eleventh Circuit held in *Shahawy v. Harrison:*

> [O]ur role on review of such actions is not to substitute our judgment for that of the hospital's governing board or to reweigh the evidence regarding the renewal or termination of medical staff privileges. Rather, the court is charged with the narrow responsibility of assuring that the qualifications imposed by

the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere.

875 F.2d 1529, 1533 (11th Cir.1989).

Accordingly, we need not reach the determination of whether Dr. Draghi had a liberty interest in his employment and calling; even assuming that he had such an interest we find that Dr. Draghi has not presented facts showing that he was not afforded due process prior to his termination from the Hospital.

## D. Alleged Substantive Due Process Violations

Dr. Draghi also alleges that the Hospital violated his substantive due process rights by terminating his employment and clinical privileges. We can dispose of this claim in short order. As we have repeatedly held, a plaintiff bringing a substantive due process claim predicated on a deprived property or liberty interest must show (1) that the state's decision was arbitrary and irrational, and (2) that the state committed a separate constitutional violation or that the state law remedies are inadequate. *Contreras v. City of Chicago,* 119 F.3d 1286, 1295 (7th Cir.1997); *Doherty v. City of Chicago,* 75 F.3d 318, 325 (7th Cir.1996). However, since this is a § 1983 action, Dr. Draghi need not show that the state law remedies are inadequate. *See Wudtke v. Davel,* 128 F.3d 1057, 1062 (7th Cir.1997).

Here, we do not see how Dr. Draghi's substantive due process claim can succeed under this Circuit's case law. As we have discussed in the preceding sections, Dr. Draghi has not alleged facts sufficient to show that the Defendants committed an independent constitutional violation, and his brief alleges no constitutional violations other than those we have

already covered. Once again, Dr. Draghi has failed to create a genuine issue of material fact on this matter, and therefore, we find that Dr. Draghi's substantive due process claim must fail.

### CONCLUSION

Dr. Draghi failed to present evidence that he had property interests in his employment or medical staff privileges. Assuming that Dr. Draghi had a liberty interest in his employment and calling, the facts show that he was afforded adequate due process prior to his termination from the Hospital. Finally, he has not sufficiently alleged facts showing a substantive due process violation.

AFFIRMED.