Momcilo **FILIPOVIC**, Plaintiff–Appellant,

v.

**K & R EXPRESS SYSTEMS, INCORPORATED**, Defendant–Appellee.

·No. 98–1114.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1998.

Decided April 28, 1999.

392

Michael I. Leonard (argued), Mari H. Leigh, Bates, Meckler, Bulger & Tilson, Chicago, IL, for Plaintiff–Appellant.

Kenneth P. Ross (argued), Chicago, IL, for Defendant–Appellee.

Before COFFEY, ROVNER and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

On July 19, 1993, the plaintiff-appellant, Momcilo Filipovic ("Filipovic"), filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging that his employer, the defendant-appellee K & R Express Systems, Inc., ("K & R") discriminated against him because of his Yugoslavian origin and in retaliation for prior complaints of discrimination. Specifically, Filipovic contended that he was denied a promotion, was "harassed and subject[ed] to derogatory language," and was given written warnings for various rule infractions. On December 20, 1993, Filipovic filed additional charges with the EEOC, this time complaining of retaliation based on K & R's denial of overtime and

vacation requests. Some seven months later, on July 19, 1994, Filipovic filed other charges with the EEOC, alleging that, on the basis of his age, he was "rejected for a promotion." The EEOC issued findings of no cause on all three filings, and Filipovic filed suit in the United States District Court for the Northern District of Illinois, alleging discrimination based on national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Filipovic did not pursue the age discrimination charge. K & R filed a motion for summary judgment which the trial court granted, ruling that certain allegedly discriminatory actions suffered by the plaintiff were time-barred under Illinois law and that the remaining actions did not create a hostile work environment. The plaintiff appeals, contending that he properly stated a claim of discrimination based on national origin under Title VII. We affirm.

## I. BACKGROUND

Filipovic was born in Yugoslavia on July 10, 1939. In 1973, he emigrated to the United States, obtained citizenship, and took up residence in Illinois. On January 26, 1982, Filipovic was hired by K & R as a full-time dockman and joined the International Brotherhood of Teamsters, Local Union No. 710 ("union").

Beginning in 1984 and throughout his employment with K & R, Filipovic contends that he was subjected to a "continuing violation" of discrimination based upon his national origin. The centerpiece of his charge of discrimination is Filipovic's allegation that he was repeatedly called names and subjected to vulgar language by his coworkers for the eleven years of his employment prior to his filing suit. For example, coworkers referred to him as "scumbag," "pyromaniac," "piece of ass," "piece of shit," "stupid asshole," "sheep fucker," and "Russian dick head." According to Filipovic, K & R supervisory personnel also engaged in coarse language directed toward him at work. Sometime

prior to 1990, Filipovic was called a "dirty Commie" by a former supervisor, and in 1993, another K & R supervisor called him a "fucking foreigner," and commented, with respect to the civil war in Yugoslavia, that "it seems to me all Serbians are barbarians." The undisputed facts at trial establish that Filipovic engaged in similar behavior, often calling his coworkers names in response.

Filipovic also contends that he was singled out for unfair treatment by K & R's management as a result of his national origin. On April 17, 1984, Filipovic went to lunch with dockman Bill Bartuch ("Bartuch"). Bartuch was well known around the company as having a "big" drinking problem. Intoxication during working hours is a terminable offense at K & R. If management has probable cause to suspect an employee is intoxicated, that employee is sent to a clinic for a blood alcohol test. Furthermore, a blood alcohol test is required under union work rules. Filipovic's supervisor, Jeffery Epstein ("Epstein") was told that Bartuch and Filipovic were seen entering a bar during their lunch break. In accordance with K & R's policies and union rules, Epstein sent Bartuch and Filipovic to submit to a blood alcohol test upon their return from lunch. Filipovic refused because of religious reasons and was discharged. Bartuch, who was not Yugoslavian, took the blood test. The afternoon of his discharge, Filipovic went to a hospital and submitted to a urine alcohol test, which yielded a negative result for alcohol. After receiving the results, K & R reinstated Filipovic with no disciplinary action.

Filipovic next contends he was discriminated against as a result of his national origin when he was issued a written warning for haphazardly loading freight on a truck trailer that resulted in a trailer fire on Interstate 94 outside of Albion, Michigan. When the freight that Filipovic improperly loaded in the trailer shifted, it fell on top of a heater stack and caused a fire on the truck which damaged the freight

while en route. K & R issued Filipovic a warning letter, but did not suspend him, nor did the plaintiff suffer any loss of benefits or pay on account of the freight damage, which amounted to $30,000. As a result of the fire, K & R instead terminated Dave Davidson, the non-Yugoslavian supervisor who managed Filipovic's loading of the freight.

In 1985, Filipovic contends that he was discriminated against when he was investigated for possibly stealing company property. After freight is reported missing, K & R policy requires all persons who came in contact with the freight, as well as any persons who management believes might have information about the missing freight, to be interviewed by a private investigator. In this case, the investigator asked Filipovic whether he had stolen fifteen calculators from the company, and Filipovic responded that he had not. The investigator went on to interview all other dockworkers as well as Filipovic's supervisor, Epstein.

Filipovic also alleges he was discriminated against and wrongfully terminated as a result of his national origin on December 3, 1993, due to his failure "to follow repeated direct verbal instruction by supervisor, John Sperling." The matter was submitted to binding arbitration, where Filipovic's union steward stressed to Filipovic the importance of following directions. On June 9, 1994, he was reinstated at K & R. The discharge was converted to a six-month disciplinary suspension without pay or other benefits, but with no loss of seniority.

Filipovic also claims that K & R discriminated against him when he was falsely accused of misusing company time. In 1994, K & R issued Filipovic a written warning letter after he engaged in a five-minute conversation with a fellow dockworker. The employee to whom the plaintiff was speaking, Kevin Nykiel ("Nykiel"), was issued an identical warning letter by Epstein for misuse of company time. Nykiel is not Yugoslavian.

Filipovic next contends that he was discriminated against when he was accused of mishandling freight in June of 1994, September of 1994, and April of 1995. In each case, Filipovic's supervisor, Epstein, issued written warnings for damaged freight. Filipovic received no disciplinary action for any of the three incidents of freight mishandling other than the warning letters, and Filipovic provided no evidence that the warnings were without merit.

Filipovic also claims that he was discriminated against for being Yugoslavian when he was denied a promotion to the position of "spotter."[1] Filipovic acknowledges that K & R is bound to follow union-imposed seniority rules in allocating spotter positions to workers. Filipovic admits that he is eleven places lower on the seniority list than the last worker in Filipovic's position who became a spotter. Furthermore, spotter positions are not available frequently; the last time a full-time dockman, such as Filipovic, was trained as a spotter occurred in 1993.

Finally, Filipovic contends that he was discriminated against for being Yugoslavian by being wrongly denied employee benefits, such as the opportunity to work overtime and freely change the dates of his vacation. K & R policy provides that when senior dockmen feel they are erroneously denied overtime work, they have the opportunity to grieve their pay claims. Filipovic had done so on previous occasions successfully and was awarded back pay. Furthermore, K & R's time sheets establish that Filipovic received overtime work at a rate equal to or greater than the other senior workers on his shift. Filipovic was not denied the opportunity to change his vacation schedule, but was sent home from work one Monday morning because he had simply forgotten that he had previously scheduled his vacation to begin that week. Under K & R policy, Filipovic would have been allowed to work that week if he had returned a vacation paycheck he had previ-

---

1. A spotter moves trucks between the various loading docks.

ously received and cashed. In this particular circumstance, Filipovic had already cashed the check, and by allowing Filipovic to remain at work and in addition receive his vacation pay, K & R would in effect have been giving him double-pay.

Filipovic also was involved in three altercations with a co-worker, Edmund Desparrios ("Desparrios"), which he contends were based on his national origin. The first incident occurred in February of 1992 and the second in March of 1992. In May of 1992, a police officer contacted Filipovic's supervisor, Epstein, after Filipovic claimed that Desparrios had followed him as he drove home after work and threatened him. Epstein summoned both men, along with their union steward, and warned them to keep their personal problems out of the workplace.

In response to all of these incidents of perceived discrimination against him, Filipovic filed three charges with the EEOC in 1993 and 1994. In each case, the EEOC concluded that Filipovic had not established violations of Title VII. On November 20, 1995, Filipovic filed suit in the U.S. District Court for the Northern District of Illinois, accusing K & R of discrimination based on national origin. The complaint provided that the objectionable conduct of his coworkers and supervisors had created a hostile work environment. K & R filed a motion for summary judgment, and the district court granted the same on December 16, 1997, and dismissed the case, finding that some of the discriminatory acts alleged by Filipovic were time barred under Illinois law and that the remaining acts did not constitute discrimination on the basis of national origin.

## II. ISSUES

On appeal, we consider whether the district court erred in failing to find that: (1) allegedly discriminatory acts constituted a "continuing violation" which became cognizable as discrimination based on national origin only after the 300–day period of limitation imposed by 42 U.S.C. § 2000e–

5(e) had elapsed; (2) a hostile work environment resulted from discrimination based on national origin directed at Filipovic; and (3) Filipovic had produced sufficient evidence of a *prima facie* case of retaliation by K & R beginning after he filed charges of discrimination with the EEOC.

## III. DISCUSSION

According to the Federal Rules of Civil Procedure, a motion for summary judgment must be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden is on the party moving for summary judgment to demonstrate the absence of a "genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted). In determining whether a genuine issue of material fact exists, "a trial court must view the record and all *reasonable* inferences drawn therefrom in the light most favorable to the non-moving party." *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990) (citation omitted). To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir.1995) (citations omitted). An appellate court will review *de novo* the district court's grant of summary judgment. *See id.*

### A. Continuing Violation

Initially, we consider whether the district court erred in failing to find that Filipovic's allegedly discriminatory acts constituted a "continuing violation" which became cognizable as discrimination based on national origin only after the

300–day period of limitation imposed by 42 U.S.C. § 2000e–5(e) had elapsed. In Illinois, a complainant must file a charge with the EEOC within *300 days* of the alleged discriminatory act and failure to do so renders the charge untimely. *See Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir.1995). Because Filipovic filed the first of his three charges of discrimination based on national origin with the EEOC on July 18, 1993, any discriminatory acts which occurred prior to September 21, 1992, would be time-barred under 42 U.S.C. § 2000e–5(e), unless Filipovic can show that these acts were "related closely enough" to the acts occurring within the established time frame "to be considered one ongoing violation." *Id.* The continuing violation doctrine allows a complainant to obtain relief for a time-barred act of discrimination by linking it with acts that fall within the statutory limitations period. *See Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). Courts will then treat the series of acts as one continuous act ending within the limitations period. *See id.* Courts will consider three factors in making this determination: (1) whether the acts involve the same subject matter; (2) the frequency at which they occur; and (3) the degree of permanence of the alleged acts of discrimination, "which should trigger an employee's awareness of and duty to assert his or her rights." *Id.* at 565. The continuing violation doctrine is applicable only if

> it would have been unreasonable to expect the plaintiff to sue before the statute ran on th[e] conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations.

*Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir. 1996) (citation omitted). In *Galloway,* this Court recognized the "critical limiting principle" that "[a]cts of ... harassment so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together in a single chain, a single course of conduct, to defeat the statute of limitations." *Id.* at 1166 (citation omitted). In *Galloway,* gender-based slurs that occurred prior to the period of limitation [2] were all issued by a single individual—the same individual whose actions gave rise to a claim of sexual harassment that the plaintiff timely brought—and all arose out of his failed romantic relationship with the plaintiff. *Id.* Under those facts, the Court found the slurs prior to the limitations period to be a "series, a pattern, and not merely a set of discrete events." *Id.* at 1167.

█ By contrast, many of the discriminatory acts which Filipovic has alleged occurred up to thirteen years prior to September 21, 1992, and of those incidents, many involve name-calling by eight fellow dockworkers. This Court has previously held that when "it is evident long before the plaintiff sues that [he] was the victim of actionable harassment, [he] cannot reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999) (citation and internal quotation omitted). The *Hardin* Court continued: "While a single comment may not be harassment, if the comment is repeated over a period of years, its cumulative effect likely precludes invocation" of the continuing violation doctrine. *Id.* Contrary to our reasoning in *Hardin,* Filipovic alleges that, despite being "taunted with ethnic slurs from his supervisors and coworkers on almost a daily basis," it was "only over time that [he] could have become aware that the name-calling was part of a discriminatory pattern." In essence, Filipovic attempts to base his claim on name-calling that alleg-

---

2. As in the case under consideration, the period of limitation in *Galloway* was 300 days.

*Id.* at 1165.

edly occurred, in much the same form, for years prior to the filing of his complaint. Inasmuch as this reasoning contradicts our holding in *Hardin,* the district court properly found that the allegedly discriminatory incidents involving name-calling and harassment which occurred prior to September 21, 1992, were time-barred under Illinois law. Furthermore, *Galloway,* 78 F.3d at 1166, recognizes that the 300–day period is "shorter than the usual statute of limitations and doctrines that would elongate the limitations period" by an unreasonable multiple are "suspect."

■ With respect to the allegations of disparate treatment by K & R management, to establish a continuing violation, Filipovic must, as discussed earlier, demonstrate that the allegedly discriminatory acts which occurred outside the limitations period were "related closely enough to constitute a continuing violation" with those occurring within the limitations period and not "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Selan,* 969 F.2d at 565 (citations and internal quotations omitted). Furthermore, in making this determination, courts consider whether the acts involve the same subject matter, the frequency at which they occur, and the degree of permanence of the alleged acts of discrimination. *See id.* Filipovic contends that K & R's management arbitrarily enforced company disciplinary policies against him because of his national origin, and the time-barred incidents relate to this general subject matter. As examples of arbitrary discipline, he cites specific incidents occurring in 1984 (false accusation of drinking on the job) and 1985 (false accusation of stealing freight), but does not allege that any other specific incident occurred until some eight years thereafter in 1993 (refusal to change vacation dates and wrongful termination). This Court held in *Selan* that a two-year gap between allegedly discriminatory incidents "weighs heavily against finding a continuing violation." *Id.* at 567.

With respect to the third factor, Filipovic has not shown that these acts were either closely related or motivated by animus against Yugoslavians. Three incidents occurring over a nine year period "cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." *Galloway,* 78 F.3d at 1166. Further, there is no evidence that any of the disciplinary incidents were discriminatory in character. As a member of the Teamsters, Filipovic was subject to union regulations which required blood and urine tests following an allegation of drinking on the job as well as to union contractual provisions allowing employers to discipline dockmen for misdirection and damage to freight. Because Filipovic failed to satisfy the three requirements provided in *Selan*—that the acts involved the same subject matter, were frequent in occurrence, and were permanent in degree—the district court's ruling that the disciplinary incidents involving Filipovic which occurred before September 21, 1992, were time-barred was proper.

### B. Hostile Work Environment

■ We next consider whether the district court erred in failing to find that a hostile work environment resulted from discrimination based on national origin directed at Filipovic. Determining whether a hostile work environment exists "involves an application of law ... to facts.... If the trial judge correctly states the law, then his findings as to whether the facts meet the legal standard will be disturbed only if they are clearly erroneous." *Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1269 (7th Cir.1991) (citations omitted). To create a hostile work environment, "the conduct at issue must 'ha[ve] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.' " *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526, 533 (7th Cir.1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct.

2399, 2404–05, 91 L.Ed.2d 49 (1986)). Title VII affords employees protection "against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive." *Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir.1998) (citation omitted).

In determining the existence of a hostile work environment, the district court considered only those incidents that occurred within the statutory time frame, thus on or after September 21, 1992. This included some of the name-calling incidents by both coworkers and supervisors and one incident during which Filipovic was given the undesirable job of unloading a trailer full of rancid food. On this basis, the district court ruled that the conduct of Filipovic's supervisors and coworkers was insufficient to constitute a hostile work environment and that the comments were few in number, were not physically threatening, were spread out over more than a year, and were relatively mild compared to epithets that can be lodged against other racial, ethnic, and religious groups.

As a threshold matter, the district court ruled that Filipovic had shown that he had faced harassment "because of" his national origin, due to the ethnic content of the comments that had been made to him. *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir.1996). However, "relatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment." *Ngeunjuntr*, 146 F.3d at 467 (citation omitted). After discounting the timebarred incidents, Filipovic has alleged that four national origin-related comments were made over the course of more than a year. Under this Court's holding in *Saxton*, 10 F.3d at 533, these incidents are insufficient to constitute a hostile work environment under Title VII in that they do not "have the purpose or effect of unreasonably interfering with an individual's work performance." Furthermore, the ethnic slurs at issue were simply part of the normal dock environment and were too infrequent to constitute the "concentrated or insistent barrage" necessary to render Filipovic's claim actionable. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir.1995). Thus, the district court did not err in concluding that the harassment suffered by Filipovic was not severe or pervasive enough to create a hostile work environment.

## C. Retaliation

The final issue concerns whether the district court erred in failing to find that Filipovic had produced sufficient evidence of a *prima facie* case of retaliation by K & R after he filed charges of discrimination with the EEOC. As evidence of K & R's retaliatory intent, Filipovic asserts that, within weeks of K & R's notice that he had filed discrimination charges, he was denied the opportunity to work overtime and change the dates of his vacation. He claims that K & R's campaign of retaliation ended only after his termination on December 3, 1993. The district court rejected Filipovic's retaliation claim, reasoning that four months separated the December 3, 1993, termination incident and his initial EEOC filing.

To demonstrate a *prima facie* case of retaliation, a Title VII plaintiff must establish that: "(1) [the] plaintiff engaged in statutorily protected activity; (2) he suffered an adverse action; and (3) there is a causal link between the protected activity and the adverse action." *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir.1997) (citation omitted). The district court ruled that Filipovic failed to make a *prima facie* case because he had not established a causal link between his engagement in statutorily protected activity and his subsequent termination.

Filipovic engaged in statutorily protected activity in filing charges with the EEOC, even if the harassment he complained of did not actually violate Title VII. *See Dey v. Colt Constr. & Dev. Co.*, 28

F.3d 1446, 1457 (7th Cir.1994). After filing the charges, Filipovic was terminated on December 3, 1993, four months later. However, Filipovic has not presented any direct evidence of a causal connection between the two events. "Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity." *Id.* at 1458. A substantial time lapse between the protected activity and the adverse employment action "is counter-evidence of any causal connection." *Johnson v. Univ. of Wis.–Eau Claire,* 70 F.3d 469, 480 (7th Cir.1995). Given the delay between Filipovic's filing charges with the EEOC and his termination, and especially in light of the arbitrator's finding that K & R had "just cause for taking disciplinary action" against him, we are of the opinion that Filipovic has failed to make a *prima facie* case of retaliation.

### IV. CONCLUSION

Filipovic, who ultimately was terminated for cause, contends that the termination was based on discrimination, as he was allegedly subjected to a hostile work environment and was retaliated against for his actions against the defendant. It seems that the discrimination in question involved little more than personality difficulties and incidents of name-calling, occurrences which this Court hardly deems actionable in this type of employment setting.

Filipovic has failed to establish that a genuine issue of material fact exists in his employment discrimination claim. In our opinion, the district court properly concluded that incidents of workplace harassment occurring prior to the statutory limitations period were timebarred and that the continuing violation doctrine is inapplicable to his claims of discrimination based on national origin. Further, we agree that Filipovic failed to demonstrate that the harassment he endured was sufficient to create a hostile work environment under Title VII. Finally, the district court correctly ruled that Filipovic fell short of establishing a *prima facie* case of retaliation by K & R since he offered no direct evidence of a causal connection between his filing charges of discrimination with the EEOC and his subsequent termination.

AFFIRMED.