**Regina McGUIRE, Plaintiff,**

**v.**

**The CITY OF SPRINGFIELD, ILLINOIS, a Municipal Corporation, Defendant.**

**No. 99–3130–CV.**

United States District Court,
C.D. Illinois,
Springfield Division.

March 13, 2001.

---

James P. Baker, Law Offices of James P. Baker, Springfield, IL, for Plaintiff.

Robert M Rogers, John P. Schmit, City of Sprinfield, Office of Corp. Counsel, Springfield, IL, Bradley B. Wilson, Gates Wise & Schlosser PC, Springfield, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

"For a dead opportunity there
is no resurrection."

Thomas Fuller (1608–1661)

### FACTS

In 1986 Plaintiff Regina McGuire applied to become an Operator at the City of Springfield's Department of Public Utilities ("the City"), a position whose duties included turning off power lines so employees who worked on them did not get electrocuted. When the City rejected her application, she filed gender discrimination claims with the Illinois Department of Human Rights ("IDHR") and the Illinois Human Rights Commission in 1987. Litigation ensued but McGuire's claim was not resolved until IDHR entered an order on March 11, 1996, directing the City to place her in its Operator Training Program. The IDHR ordered that McGuire be given back pay and seniority retroactive to 1987 so long as she successfully completed the Operator Training Program. All told, McGuire stood to collect some $125,000 in total compensation if she could complete the Operator Training Program.

On November 6, 1995, the City placed McGuire in its Operator Training Program as an Operator Trainee I, the first of the program's three stages. McGuire performed well as an Operator Trainee I and was promoted to Operator Trainee II. Still, she had some misgivings about her training and decided to address them in a May 1997 letter to Mike Hickey, the Department of Utilities superintendent of electric operations—a central figure who determined whether trainees would be promoted. In McGuire's opinion, the training program was flawed because her "training ha[d] not received priority" and the performance evaluations were too infrequent. The Training Committee also had concerns, but their concerns focused on McGuire's inability to master a Trainee II's responsibilities. Nevertheless, the Committee found that McGuire had performed well enough to advance to Trainee III status. Mike Hickey, the Department of Utilities superintendent of electric operations, agreed with the Committee's recommendation and promoted McGuire to Operator Trainee III.

Having been made an Operator Trainee III, McGuire was set to begin a six-month probationary period which, if successfully

completed, would result in her being promoted to Relief System Operator on March 14, 1998. Two days before McGuire's six-month probationary period expired, superintendent Hickey informed her that the Committee unanimously recommended that she not be promoted. The Committee's main concern was her inability to "function independently as an Operator and handle any situations that may arise, emergency or otherwise, in a safe and efficient manner as required for [the Relief System Operator] position." Hickey agreed with the Committee and declined to promote McGuire. However, he and various Committee members believed that she could master the skills necessary to be a Relief System Operator if she participated in an extended training program.

Although McGuire's Trainee III performance reviews had been merely average, she was disappointed to hear that she would not be promoted since neither the superintendent nor the Committee ever discussed performance problems with her. Nonetheless, she was determined to become a Relief System Operator so she agreed to a sixty-day extension of her probationary period. This additional time proved of no ultimate benefit to McGuire though; she was still unable to master her Operator Trainee III responsibilities by May 1998 and the City opted to dismiss her from the program rather than extend her probationary period for a second time.

McGuire now argues that the City dismissed her from the training program for reasons other than her performance. She contends that the City was in fact retaliating against her because she had previously filed a gender discrimination claim to gain entry to the Operator program. She also argues that the City had a financial interest in seeing her fail because it would have to award her back pay and benefits of some $125,000 if she became an Operator. Similarly, McGuire contends that the employees who reviewed her work had motive to find fault with her performance since her successful completion of the program would make her senior to some of the reviewers.

Even if McGuire's claims are true, the City argues she cannot prevail on her retaliation charge. In its estimation, the time that passed between her gender discrimination claim and dismissal from the program negates any inference that might suggest improper motive on its part. Additionally, the City argues that McGuire's performance created a legitimate basis for her dismissal.

## STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). When determining whether factual issues exist, a "court must view all the evidence in the light most favorable to the nonmoving party." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). However, "[s]ummary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 479 (7th Cir.1996) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (1986)).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Rather, she "must come forward with 'spe-

cific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* Finally, "[a]lthough [the court] must, for purposes of summary judgment review, draw any inferences from the record in favor of [the plaintiff, it is] not required to draw every conceivable inference from the record. [It] need draw only reasonable ones." *See Tyler v. Runyon,* 70 F.3d 458, 467 (7th Cir.1995) (citation omitted).

## ANALYSIS

■ In the instant case, McGuire alleges that the City dismissed her from its training program because she filed a gender discrimination claim against the City in 1987. Such retaliation is actionable under 42 U.S.C. § 2000e–2(a)(1) ("Title VII").[1] To prove a Title VII retaliation claim McGuire must, by a preponderance of the evidence, show that: 1) she engaged in a statutorily protected expression, i.e. reporting or opposing conduct prohibited by Title VII; 2) she suffered an adverse employment action; and 3) there is a causal link between her protected expression and the adverse employment action. *See Pafford v. Herman,* 148 F.3d 658, 670 (7th Cir.1998). If she does this, the City must offer a legitimate, nondiscriminatory reason for its actions. *See Id.* The burden then shifts back to McGuire to show that the City's proffered reason is merely pretext for retaliation. *See Id.*

■ The City does not contest that McGuire's filing of a gender discrimination claim was statutorily protected and that her removal from the training program was an adverse employment action. Instead, it argues that McGuire's gender discrimination claim is not causally related to her dismissal from the training program. According to the City, the two and a half years that passed between McGuire's discrimination claim and dismissal is so long that no inference of retaliation can be drawn.

■ While the timing of an adverse employment action may provide circumstantial evidence of retaliation, no retaliatory inference will be drawn unless the adverse employment consequence occurs "fairly soon after the employee's protected expression." *See Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1010 (7th Cir.2000) (quoting *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir.1998)). In *Paluck,* the plaintiff filed a sexual harassment complaint a year before her termination. Upon considering her retaliation claim, the Seventh Circuit stated that "[t]hat interval, standing alone, is too long for the timing of [her] firing to raise an inference of discrimination." *See Id.* at 1010 (citations omitted).

■ In the instant case, McGuire filed a gender discrimination complaint in 1987. There is *no dispute that superintendent* Hickey and other key people in the training process knew about her complaint prior to her dismissal from the training pro-

1. This statute, also known as Title VII, makes it unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race,

color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2(a)(1).

With respect to training programs the statute provides that:

It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training. *See* 42 U.S.C. § 2000e–2(d).

gram in 1995. Contrary to McGuire's wishes, no inference of retaliation can be drawn from these events. The span of time between her gender discrimination complaint and dismissal is simply too long to support such an inference. *See Id.; see also Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 399 (7th Cir.1999) (finding that plaintiff failed to raise an inference of retaliation where four months passed between the filing of his discrimination charge and termination); *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir.1998) (finding that a plaintiff's termination eight months after filing a gender discrimination claim did not raise an inference of retaliation). McGuire attempts to avoid this result by arguing that 1987 is not the proper point of reference, that the Court should instead consider November 6, 1995—the date of her instatement as an Operator Trainee—as the relevant date from which to measure how much time passed before the City allegedly retaliated. McGuire is incorrect. The law clearly fixes the date of a plaintiff's discrimination complaint as the relevant moment for this type of inquiry. *See Id.* In any case, the outcome of her case would not change even if the Court were to accept her argument. There would still be a two and a half year gap between McGuire's instatement and dismissal and that is simply too long a period from which to draw a retaliatory inference. *See Paluck,* 221 F.3d at 1010; *Filipovic,* 176 F.3d at 399; *Adusumilli,* 164 F.3d at 363.

■ McGuire also claims that the City and the Committee members had financial and personal interests in seeing her fail. She argues that the City had a financial incentive in dismissing her from the training program because it could thereby avoid surrendering the $125,000 in back pay it would owe her. She also argues that some of the Committee members wanted her to fail because she would be given seniority over some of them if she completed her training. Regardless of whether these motives actually existed, they are not actionable under Title VII. They relate solely to economic interests and are not based on McGuire's decision to engage in "protected expression"—*i.e.* filing a claim which alleges discrimination based on color, religion, national origin or gender. As such, McGuire has failed to make a *prima facie* case of retaliation.

■ Even if McGuire's evidence could be said to state a *prima facie* case of retaliation, her claim would still fail. This is because the City has a "legitimate, nondiscriminatory reason" for removing McGuire from its training program which McGuire fails to rebut as being merely pretextual. *See Pafford,* 148 F.3d at 670. The specific reason the City gives for McGuire's dismissal is her substandard performance. It establishes her substandard performance through the harsh criticism the Committee members routinely listed in the comments section of McGuire's evaluations and by stating that the Committee ultimately concluded that she failed to demonstrate the confidence necessary to work as an Operator.

McGuire tries to paint these criticisms as pretext by alleging that: 1) the City could have extended her probationary training if it had concerns about her competence; 2) one of the operators demonstrated trust in her abilities; 3) the Committee members did not verbally warn her of her deficiencies; 4) she should have been given another opportunity to train since another employee had been given a second chance; 5) the City cannot credibly argue that it lacked confidence in her work because it could have assigned her specific tasks to help her improve her System Operator skills and alleviate the concerns it had about her abilities.

First, the City *did* extend McGuire's probationary training by giving her an additional sixty days in March 1998 to improve her Trainee II skills. The City was not required to offer her this first extension, nor was it required to give her a second extension. After sixty days, McGuire's performance did not improve—a fact which is borne out by several Committee members' evaluations. In light of

the numerous negative comments by her reviewers, superintendent Mike Hickey decided that she lacked the skills necessary for promotion. There is no question that Hickey had the authority to make this decision. Furthermore, the evidence supports it.

Second, even if an Operator did allow McGuire to work without supervision, it does not cast doubt on the City's decision to dismiss her. At best, it demonstrates the supervisor's bad judgment since he allowed a trainee to undertake duties she may not have been qualified to perform. More to the point, the Committee members and superintendent Hickey were the persons responsible for deciding who was capable of working as an Operator. In their considered opinion, McGuire did not pass muster. Thus, the Operator's tacit approval of McGuire's work is irrelevant. Moreover, the City never argued that McGuire was completely incompetent or unable to perform some work without supervision.

Third, while there may have been a practice among Committee members and superintendent Hickey of verbally informing trainees about their deficiencies, they were not required to provide verbal notice. They informed McGuire of her deficiencies through regular written performance evaluations. She reviewed the Committee's criticisms and had an opportunity to correct her deficiencies during the course of her probationary training, but did not do so. The City extended McGuire's probation so she could master an Operator's duties and she was still unable to perform satisfactorily. As such, she cannot cry foul about lack of verbal notice. She had plenty of written notice.

Fourth, McGuire cannot demonstrate pretext by comparing her situation with employee Bob Ellegood. The record shows that Mr. Ellegood successfully completed his training program before being promoted to Relief System Operator. After his promotion, Mr. Ellegood experienced problems and the City placed him back in training so he could receive additional instruction. McGuire argues that she should have received the same treatment. The problem with her argument is that she never completed the training program and could not be demoted for additional training like Mr. Ellegood was. In any case, her complaint on this matter is without merit. The City gave her a "second chance" by extending her training. In this respect, McGuire's treatment was equal to Mr. Ellegood's. Unfortunately for her, she could not capitalize on the opportunity.

Fifth, the City was not required to assign McGuire specific tasks to help her improve her System Operator skills. Its training program did not exist solely for her benefit and it could not be expected to tailor exercises to fit her individual needs. She, like the trainees who came before her, was given a program and a chance to succeed. When she struggled, her superiors tried to help by giving her written evaluations and a extended training period. If the City's failure to make additional accommodations shows anything it shows the limits of an employer's patience and the need to stop wasting valuable resources on a candidate who could not master essential skills.

Despite her attempts, McGuire fails to show that she would have successfully completed the training program but for her gender discrimination claim. *See McKenzie*, 92 F.3d at 483 (requiring such a showing by a Title VII retaliation claimant). She also fails to show any pretext. *See Pafford*, 148 F.3d at 670. Her failure in either of these respects means that the City is entitled to summary judgment.

*Ergo*, Defendant's Motion for Summary Judgment is ALLOWED. All pending motions in this case are DENIED as MOOT.