**Georgia BRAHOS, et al., Plaintiffs–Appellants,**

v.

**Dorothy BROWN, et al., Defendants–Appellees.**

No. 03–1117.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 2003.

Decided Oct. 14, 2003.

Before MANION, EVANS, and WILLIAMS, Circuit Judges.

### ORDER

Georgia Brahos, Elizabeth Diaz, and Sheila Fahey–Wallenius were terminated from their employment in the Office of the Clerk of the Circuit Court of Cook County shortly after Dorothy Brown was elected Clerk. They sued Brown and two of her deputies, Squire Lance and Gail Lutz, alleging that their terminations were politically motivated and that they were denied due process because they were terminated without cause and without an opportunity to be heard. After granting summary judgment to defendants Lance and Lutz because they were not personally involved in the termination decisions, the district court granted summary judgment to Clerk Brown, finding that (1) Brahos and Diaz could not show that they had engaged in any constitutionally-protected activity; (2) Fahey–Wallenius failed to show that her political affiliation or activities were a mo-

tivating factor in her termination; and (3) plaintiffs did not have an established property right in their jobs and were not entitled to any process before termination. Plaintiffs appeal,[1] and we affirm, agreeing with the district court's conclusions in all respects.

## I. BACKGROUND

Georgia Brahos, Elizabeth Diaz, and Sheila Fahey–Wallenius began their employment with the Clerk of the Circuit Court of Cook County during former Clerk Aurelia Pucinski's tenure. Within the Clerk's Office there are two types of employees, "Career Service" and "Exempt Non–Career Service" ("Exempt"), the latter typically are recognized as political appointees. The General Rules and Regulations handbook promulgated by the Human Resources Department under the Pucinski administration provided that "Career Service" employees may not be disciplined or terminated for cause without a hearing or some other form of due process, while "Exempt" employees are considered "at-will" employees who may be terminated at any time.

Georgia Brahos joined the Clerk's Office in 1991, and in 1992 was promoted to the "Exempt" position of Confidential Secretary/Administrative Assistant to Pucinski's Associate Clerk for Personnel, Daniel Stralka. Brahos held this position until October 2000, when she was transferred to the position of Director of Telecommunica-

tions in the MIS Bureau, a position that also was considered "Exempt" under the Pucinski administration.[2] Elizabeth Diaz joined the Clerk's Office in 1994 as Executive Confidential Secretary/Administrative Assistant to Clerk Pucinski, an "Exempt" position she held until November 2000. At that point in time, Diaz was transferred to the newly-created position of Assistant Director of Electronic Information in the Court Operations Bureau, a position determined by Stralka to be "Career Service." Sheila Fahey–Wallenius also joined the Clerk's Office in 1994, working in the "Exempt" position of Confidential Secretary/Administrative Assistant to the Associate Clerk for Court Operations until 1999, when she was transferred to the State Disbursement Unit to replace her former boss. In February 2000, Fahey–Wallenius was promoted to the position of Assistant Chief Deputy Clerk of Child Support—Family Law Bureau, an "Exempt" position in the Pucinski Administration. In August 2000, Stralka informed her in a letter that she no longer would be considered an "at-will" employee (i.e., she no longer would be considered "Exempt").

Shortly after Dorothy Brown became Clerk of the Circuit Court of Cook County in January 2001, she conducted a review of the various positions in the Clerk's Office and assessed the office's organizational needs with respect to "Exempt" versus "Career Service" positions. In doing so, Brown assembled a team to evaluate the duties and responsibilities of each division

---

1. Plaintiffs do not appeal the grant of summary judgment to defendant Lutz.

2. It is unclear from the record whether Brahos's position was ever in fact classified as "Career Service." Her name and title do not appear on the "Exempt" lists prepared by Daniel Stralka, Pucinski's Associate Clerk for Personnel, during the latter stages of the Pucinski administration, but Stralka testified at his deposition that the position was consid-

ered "Exempt" and plaintiffs do not indicate when or how Brahos ever learned that her position was "Career Service." *Cf. Stein v. Ashcroft,* 284 F.3d 721, 725 (7th Cir.2002) ("We will not search the record in an attempt to make [appellant's] arguments for her."). Because it makes no substantive difference to our analysis, we will assume Brahos actually was informed that her position was at some point reclassified as "Career Service."

within the office, and she met with the various department heads to discuss the functions, job descriptions, responsibilities, and hierarchies within each department. In the process, Clerk Brown determined that the positions held by Brahos, Diaz, and Fahey–Wallenius were "Exempt" positions, which she wanted to fill with new people of her own choosing.

On February 2, 2001, Fahey–Wallenius met with her supervisor, Mike Moore, and defendant Gail Lutz, Clerk Brown's Associate Clerk for Human Resources, and was presented a letter to sign indicating that Clerk Brown was reclassifying her position as "Exempt." After she signed the letter acknowledging the reclassification, her employment was terminated. On February 5, Brahos met with defendants Lutz and Squire Lance, Clerk Brown's Executive Clerk for Public Policy and Human Resources, and was informed that Clerk Brown no longer required her services and her employment was terminated. Also on February 5, Diaz met with defendants Lance and Lutz and signed a letter confirming that Clerk Brown was classifying her position as "Exempt," after which she chose to resign rather than have her employment terminated.

On February 14, Fahey–Wallenius appealed her termination in a letter to Clerk Brown, which Clerk Brown referred to Lance for consideration. John McNamara, Fahey–Wallenius's Democratic Committeeman, called Lance and was told that Fahey–Wallenius had not been terminated for any wrongdoing and that both he and Clerk Brown (erroneously) believed Fahey–Wallenius was a Republican whose loyalty and political allegiance was to for-

mer Clerk Pucinski.[3] Lance later met with Fahey–Wallenius and informed her that her termination was "purely political," that Clerk Brown had to concern herself with people who were close to former Clerk Pucinski and would not be loyal to Clerk Brown, and that he (erroneously) thought she was a Republican.

## II. ANALYSIS

### A. First Amendment Claims

■ Plaintiffs challenge the district court's determination that Brahos and Diaz did not engage in any constitutionally-protected activity, and that Fahey–Wallenius's activity was not a substantial factor in her termination. We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in favor of the party opposing the motion. *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 491–92 (7th Cir.2002). To establish a prima facie case of politically-motivated termination, a plaintiff must show by a preponderance of the evidence that (1) she engaged in constitutionally protected activity, and (2) that constitutionally protected conduct was a substantial factor in the decision to terminate her employment. *Id.* at 495.

The district court found, and we agree, that Brahos and Diaz have not shown that they engaged in any constitutionally-protected activity. Their only assertions to support their claim of protected activity are that (1) they were "associated with and political supporters of the former Republican Clerk, Aurelia Pucinski," (2) they had worked on Pucinski's Republican campaign

---

**3.** Fahey–Wallenius asserted in a termination appeal letter to defendant Lutz that she had always been a member of the Democratic party, so Lance's belief about her status as a Republican was erroneous. Clerk Pucinski was elected in 1988 as a Democrat and re-

mained a Democrat through her 1996 reelection. She changed parties and became a Republican prior to running for election to the Cook County Board in 1998 (she lost the election). Clerk Brown was elected as a Democrat.

for President of the Cook County Board, and (3) that Brahos had volunteered on the alderman campaigns of Pucinski's father. These bare assertions, without more, are insufficient to show constitutionally protected activity, particularly since Brahos and Diaz both began working for Clerk Pucinski when she was a Democrat candidate and officeholder, and both also supported Dorothy Brown's Democratic campaign for Clerk (which former Clerk Pucinski also supported). Under these circumstances, the preponderance of the evidence does not suggest that Brahos and Diaz engaged in any constitutionally protected activity, and Clerk Brown was therefore entitled to summary judgment on Brahos's and Diaz's First Amendment claims.[4]

▆ With respect to Fahey–Wallenius, we agree with the district court that Lance's statements that he and Clerk Brown (erroneously) thought Fahey–Wallenius was a Republican could satisfy the constitutionally protected activity prong of a *prima facie* case. *See, e.g., Nelms v. Modisett*, 153 F.3d 815, 819 (7th Cir.1998).

Nevertheless, we further agree with the district court that Fahey–Wallenius fails to provide any evidence that her presumed status as a Republican was a substantial factor in Clerk Brown's decision to terminate her employment. Clerk Brown stated in her deposition that she alone made the decision to terminate plaintiffs,[5] and she did not indicate that she knew of Fahey–Wallenius's political affiliation or any particular closeness between Fahey–Wallenius and Clerk Pucinski, other than Fahey–Wallenius's employment positions in the Pucinski administration. Clerk Brown was therefore entitled to summary judgment on Fahey–Wallenius's First Amendment claim.[6]

## B. Due Process Claims

▆ Plaintiffs also appeal the district court's grant of summary judgment to Clerk Brown on their due process claims, challenging the court's conclusion that plaintiffs failed to establish a property interest in their employment for which they were entitled to due process. "To prevail

---

**4.** Even if this conduct constituted protected activity, plaintiffs offer no evidence that Clerk Brown knew of or considered this activity before making her decision to terminate their employment, and the three years between Clerk Brown's termination decisions and Brahos's and Diaz's work for Pucinski's Republican campaign, and the greater than ten years since Brahos's work on Pucinski's father's aldermanic campaigns, are too long to support a reasonable inference of political motivation for the terminations. *See, e.g., Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir.2001); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir.1999).

**5.** Clerk Brown testified that no one assisted her in deciding to terminate plaintiffs' employment, and Lance testified that he was not involved in the termination decisions. Plaintiffs attempt to refute this testimony by arguing that the court should infer Lance's involvement from his senior role in personnel

decisions in Clerk Brown's administration. That is not a reasonable inference in the face of explicit contradictory evidence. As a result, because Lance was not personally responsible for any alleged deprivation of a constitutional right, he was properly granted summary judgment on plaintiffs' claims. *Cf. Gibson v. City of Chicago*, 910 F.2d 1510, 1523 (7th Cir.1990); *Rascon v. Hardiman*, 803 F.2d 269, 273–74 (7th Cir.1986); *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985).

**6.** Fahey–Wallenius argues that Lance's statements that she was terminated for "purely political" reasons, and because he and Clerk Brown thought she was a Republican, should be attributed against Clerk Brown as evidence of political motivation in her decision to terminate Fahey–Wallenius's employment. Lance, however, did not participate in the termination decisions, so his commentary cannot be the basis for Clerk Brown's potential liability. *See Nelms*, 153 F.3d at 819.

under the due process clause in the employment context, a plaintiff must establish a property interest in the employment." *Wolf v. Larson*, 897 F.2d 1409, 1411 (7th Cir.1990). Under Illinois law, "[t]o show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Krecek v. Bd. of Police Comm'rs of La Grange Park*, 271 Ill.App.3d 418, 207 Ill.Dec. 227, 646 N.E.2d 1314, 1318–19 (1995); *see also Draghi v. County of Cook*, 184 F.3d 689, 692–93 (7th Cir.1999). Here, plaintiffs attempt to evidence a property right in their continued employment by first pointing to Clerk Pucinski's labeling of their positions as "Career Service." Plaintiffs also rely on Clerk Pucinski's General Rules and Regulations handbook that limited the Clerk's ability to discipline "Career Service" employees or terminate them *for cause* and provided that such employees could request a hearing before the Personnel Review Board if any disciplinary action was taken.

Assuming plaintiffs' positions were "Career Service" positions,[7] as they were labeled by Clerk Pucinski's administration shortly before Clerk Brown took office,[8] the handbook does not provide a reasonable basis for plaintiffs to believe their "Career Service" assignation could not change. Indeed, the handbook provides that the number and identity of "Exempt" employees (i.e., "at-will" employees), and the employees assigned to those positions, "may change from time to time as the operational and organization needs of the Clerk's Office require." It seems that Clerk Pucinski's assignation of plaintiffs as "Career Service" employees from their previous status as "Exempt" employees exemplifies this flexibility and discretion. Furthermore, the handbook explicitly provides on the first page that the General Rules and Regulations are considered "general management guidelines," and expressly disclaims that "[i]t is not the purpose of these General Rules and Regulations to create an employment contract, and the Clerk ... assumes no contractual liability as a result of instituting these policies and procedures." Under these circumstances, the handbook could not provide a reasonable basis for plaintiffs to believe they had an employment contract or property interest in their continued employment as "Career Service" employees in the Clerk's Office such that, following a change of administrations, Clerk Brown owed them any process before changing their status to "Exempt" and effecting their terminations. *See, e.g., Davis v. Times Mirror Magazines, Inc.*, 297 Ill. App.3d 488, 231 Ill.Dec. 826, 697 N.E.2d 380, 388 (1998) (disclaimer language in handbook precludes formation of a contract); *Habighurst v. Edlong Corp.*, 209

---

**7.** To determine whether an employment position is "Exempt" versus "Career Service," courts examine "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Tomczak v. City of Chicago*, 765 F.2d 633, 640–41 (7th Cir.1985) (citations omitted); *see also Upton v. Thompson*, 930 F.2d 1209, 1214–16 (7th Cir.1991). "'The test is whether the *position* held by the individual authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation.'" *Tomczak*, 765 F.2d at 641 (quoting *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir.1981)) (emphasis added in *Tomczak*). Defendants argue that regardless of Clerk Pucinski's classification, plaintiffs' positions were in fact "Exempt" under the appropriate analysis.

**8.** Again, it is unclear that Brahos ever was informed that her position was reclassified as "Career Service." *See supra* note 2.

Ill.App.3d 426, 154 Ill.Dec. 226, 568 N.E.2d 226, 228 (1991) (same); *but see Perman v. ArcVentures, Inc.,* 196 Ill.App.3d 758, 143 Ill.Dec. 910, 554 N.E.2d 982, 985–87 (1990) (disclaimer did not preclude a reasonable person from believing the policy manual to be a contract offer because language was "not set off from the rest of the text, printed in capital letters or titled"). Clerk Brown was therefore entitled to summary judgment on plaintiffs' due process claims.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.